UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | 3:02-cr-191 (CFD) |
| | : | |
| SAMUEL VIRELLA | : | |
| _____ | : | |
| | : | |
| SAMUEL VIRELLA | : | |
| | : | |
| v. | : | 3:03-cv-1978 (CFD) |
| | : | |
| UNITED STATES OF AMERICA | : | |

**RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Samuel Virella moves *pro se* pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his December 19, 2002 sentence of 168 months imprisonment.[1]

**I.    Procedural History and Factual Background**

On June 24, 2002, Virella was arrested on a criminal complaint, and then charged in an indictment on July 10, 2002, along with nineteen other defendants. Virella was charged in eight counts of the indictment. On September 19, 2002, Virella pled guilty to Count One of the indictment, which charged him with conspiring to possess with intent to distribute and distribution of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). A few days prior to the plea hearing, Virella's defense counsel—an experienced Assistant Federal Defender—sent a letter to the Court alerting the Court to Virella's

---

[1] On November 18, 2009, the Court reduced Virella's sentence pursuant to 18 U.S.C. § 3582(c)(2), sentencing Virella to a term of imprisonment of 135 months. The Court understands Virella's petition to apply to this reduced sentence as well.

-1-

recent hospitalizations and treatments for seizures, as well as Virella's related mental issues. Defense counsel also stated in the letter that despite Virella's medical troubles, he believed, based on his "course of dealings with [Virella]," that Virella was "competent." Defense counsel further indicated that while Virella had certain limitations, he "clearly understands the nature and consequences of the proceedings against him and the roles of the Court, the prosecutor and defense counsel."

At the September 19, 2002 plea hearing, counsel for Virella expanded on the contents of this letter. Defense counsel described Virella's history of seizures and the effects that these seizures had on Virella's memory and his ability to read. Defense counsel also sought permission to seek a neuropsychological evaluation in aid of sentencing to determine the extent of Virella's memory loss. Following the plea proceeding, the neuropsychological examination was conducted by Dr. Julia Ramos Grenier.

During the plea proceeding of September 19, the Court canvassed Virella to determine his competence. The Court inquired as to the number and frequency of Virella's seizures as well as his medication. The Court also focused on whether Virella could understand the plea proceedings. As part of this inquiry, the following colloquy occurred:

> Q: And the reason I'm asking you these questions, I want to make sure that you're thinking clearly today and you understand everything that's going on. Do you believe that you understand what we're doing here today?
> A: Yeah, I understand.
> Q: And are you able to think clearly?
> A: Yeah, I'm listening.
> Q: And do[] the seizures interfere with your ability to think clearly?
> A: You - - what you mean?
> Q: You've told me you've had some seizures recently. And I want to see if that affects your ability to think clearly now as you are sitting here.

      A:      I can think clearly. It's just like - - it's like short time memory loss.
. . .
      Q:      And how about as you sit here today, is there anything that's interfering with your ability to think clearly? In other words, sometimes you take medicine and it affects you, you know, makes you not be able to think right or not be able to focus or concentrate. Is there anything that's stopping you from doing that now?
      A:      I wouldn't say so, no.
. . .
      Q:      And do you believe that your mind is clear today?
      A:      Yeah, I do.
      Q:      And do you understand what's going on here today?
      A:      Yeah.

(Guilty Plea Transcript 13–16).

In addition to alerting the Court prior to the plea proceeding of Virella's mental health situation, defense counsel elaborated at the proceeding on the topic and asserted that Virella was now receiving his seizure medication regularly and that counsel was "satisfied from my dealings with him that he's competent." Defense counsel noted that, although Virella had certain mental limitations, he was able to assist defense counsel, and Virella could understand the nature of the charges and the evidence against him. Virella confirmed defense counsel's statements, noting that counsel read and explained the charges in the indictment to him and that he understood the charges. Virella further demonstrated his understanding by discussing with the Court the number of counts in the indictment, ("There's nine of them [including forfeiture], ain't there?"), and his understanding that the amount of cocaine alleged in the indictment was a cumulative amount based on a number of transactions over time ("That means you guys, they added it all up, right?" and "They [the jury] are free to do that, right?"). He also indicated that he understood that, until the time of sentencing, he will not know for certain what his ultimate sentence would be ("Basically I won't know if I'm going to get higher or lower?").

Virella also asked questions of the Court concerning his sentencing exposure. Specifically, Virella asked the Court to clarify his sentencing range. Once the range was calculated in terms of years, Virella indicated that he understood. Similarly, Virella also asked the Court to clarify the difference between parole and supervised release, and the possibility of his being released on supervised release after serving eighty-five percent of his sentence. Mr. Virella also stated that he understood that he had reserved his right to appeal his sentence, though not his conviction. Based on the Court's questions to Virella, Virella's answers and statements, and the assertions of defense counsel, the Court indicated that it was convinced that Virella was competent to plead guilty.

At sentencing on December 19, 2002, defense counsel indicated that he had read the presentence report to Virella and had summarized Dr. Grenier's neuropsychological evaluation. Virella asserted that he understood both documents. In Dr. Grenier's report, she concluded that Virella was competent and able "to make appropriate legal decisions with the assistance of his counsel." Dr. Grenier also concluded that Virella suffered from a "mild, chronic, and diffuse neuropsychological impairment." During sentencing, the Court focused, in part, on Virella's assertion to Dr. Grenier (as indicated in Dr. Grenier's report) that he "did not understand a thing that was said [in court] because they use too many big words [and that] his lawyer tries to explain things to him but the he also uses big words that he can't understand." Defense counsel explained that Virella was uneasy when complicated legal terms were used; however, counsel stated that Virella understood all the essential facts from his guilty plea—particularly the rights he was waiving by pleading guilty and the conduct and crime to which he had plead guilty. Virella echoed counsel's statement declaring that he "understood a lot of things" from his plea

hearing and "understood all the basics." He noted that he did have difficulty understanding "big words" but had no wish to withdraw his guilty plea and did not have any questions about what occurred during that proceeding. Counsel for Virella also informed the Court that he had explained to Virella that, although his mental limitations were significant, they did not rise to the level of limitation necessary for a departure from the guideline range on that basis; therefore, counsel explained that, in exchange for foregoing a motion for downward departure, the government had agreed to recommend a sentence at the bottom of the guideline range.

In imposing Virella's sentence, the Court detailed the many factors that it considered to determine the appropriate sentence for Virella. Among those factors was Virella's background, including his difficult childhood, mental and psychiatric problems, learning disabilities, seizures, and emotional disorders. The Court sentenced Virella to the bottom of the guideline range—168 months. After imposing the sentence, the Court reminded Virella that he had the right to appeal his sentence within ten days, and had the right to apply to appeal *in forma pauperis*. Finally, the Court inquired whether Virella had any questions about the sentencing hearing or the sentence the Court imposed. Virella asserted that he had none.

## II.  Discussion

Virella claims ineffective assistance of counsel, alleging that his counsel (1) failed to bring to the attention of the Court Virella's mental condition and health issues; (2) failed to have Virella evaluated; and (3) failed to contest whether Virella was competent and capable to enter a guilty plea.[2]

---

[2] Because Virella is proceeding *pro se*, the Court reads his submissions broadly. See Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008); Restrepo v. United States, Nos. 3:09CV66, 3:99CR85, 2010 WL 56107, at *6 (D. Conn. Jan. 6, 2010).

Section 2255 of Title 28 of the United States Code permits a federal prisoner to move to vacate, set aside or correct his sentence if the sentence was imposed in violation of the Constitution or laws of the United States or if the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (quoting Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989)).

"A claim of ineffective assistance of counsel is analyzed under the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)." Contino v. United States, 535 F.3d 124, 127–28 (2d Cir. 2008). To satisfy the first part, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. To satisfy the second part of the test, the petitioner must prove prejudice—namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 692, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Under the Strickland test, judicial scrutiny of counsel's performance must be highly deferential. See id. at 689. "To establish prejudice where the defendant pleaded guilty, the habeas petitioner must show that, but for counsel's deficient representation, the petitioner "would not have pleaded guilty and would have insisted on going to trial." Wells v. United States, No. 3:07cv1740, 2010 WL 363339, at *5 (D. Conn. Jan. 25, 2010). Based on the record in this case, it is clear that defense counsel made a great effort to bring Virella's mental condition and health

issues to the Court's attention and adequately explore the situation with a mental health professional: defense counsel submitted a letter to the Court six days prior to Virella's plea hearing to alert the Court as to Virella's condition and made suggestions on how to proceed; defense counsel discussed Virella's health at the plea proceeding and recommended the retention of Dr. Grenier to examine and report on Virella prior to sentencing; and defense counsel further discussed Dr. Grenier's report on Virella's health during the sentencing proceeding. In addition, due to defense counsel bringing Virella's mental problems to the Court's attention, the Court engaged both Virella and defense counsel in a lengthy inquiry at the plea hearing to determine Virella's competency.

Virella also claims that defense counsel was ineffective because he failed to have Virella evaluated by a mental health professional. This claim is clearly without merit as the Court granted defense counsel's request for an evaluation, reviewed the in-depth mental health evaluation by Dr. Grenier, and fully discussed Dr. Grenier's report with Virella and defense counsel at sentencing. The record supports a finding that defense counsel sufficiently explored Virella's competency and ability to plead guilty. As previously discussed, defense counsel raised Virella's health as an issue prior to Virella pleading guilty and diligently monitored Virella's condition throughout his representation of Virella, including through sentencing. Finally, no other prejudice was established as Dr. Grenier's report served as an adequate basis for the Court's conclusion that Virella was competent, fully understood his rights in connection with his plea proceeding, and knowingly waived them.

**III.    Hearing**

Under Section 2255, a prisoner who moves to vacate, set aside, or correct his sentence is entitled to a prompt hearing "to determine the issues and make findings of fact and conclusions of law with respect thereto," unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

"To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). To do so, the petitioner "must set forth specific facts which he is in a position to establish by competent evidence." LoCasio v. United States, 395 F.3d 51, 57 (2d Cir. 2005). The district court does not need to assume the credibility of the petitioner's factual assertions, but may look to the record in the underlying proceedings. See Puglisi, 586 F.3d at 214. If it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Id. at 213 (citing Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255). Cf. Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (holding that it is within the district court's discretion to expand the record, for example by requiring an affidavit from the attorney, without conducting a full hearing).

In light of the foregoing discussion, it plainly appears from this Court's examination of the record and the briefs that the petitioner's claim lacks any merit. Therefore, no evidentiary hearing is necessary in this case.

## IV.     Conclusion

Accordingly, Virella's Motion to Vacate, Set Aside, or Correct his Sentence is DENIED. Moreover, because Mr. Virella has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c)(2).

SO ORDERED this 1st day of March 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**